# IN THE OREGON TAX COURT

MERCY MEDICAL CENTER, INC.,
an Oregon nonprofit corporation

*v.*

DEPARTMENT OF REVENUE

(TC 3213)

Eugene E. Feltz, Palmer, Feltz, Smith & McDonald, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered October 21, 1992.

### CARL N. BYERS, Judge.

This matter is before the court on Cross Motions for Summary Judgment. The issue is whether the gift shop area in plaintiff's hospital is subject to property taxation. Defendant concedes plaintiff is a charitable organization entitled to claim exemption under ORS 307.130. Exemption of the remainder of plaintiff's hospital is not disputed. The Douglas County Assessor disallowed the exemption only for the gift shop. After hearing, defendant, in its Opinion and Order No. 90-3878, sustained the denial and plaintiff appealed.

The relevant portion of ORS 307.130(1) provides:

"Upon compliance with ORS 307.162,[1] the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a)   * * * [O]nly such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

■     It must be remembered that exemption statutes such as this are strictly construed. Taxation is the rule; exceptions must be expressly granted. The long-standing rule in Oregon is that "an exemption should be denied to exist, unless it be so clearly granted as to be free from reasonable doubt." *Behnke-Walker v. Multnomah County*, 173 Or 510, 521, 146 P2d 614 (1944).

■     "Hospitals, as such, enjoy no inherent exemption from taxation; * * *." *Corporation of Sisters of Mercy v. Lane Co.*, 123 Or 144, 153, 261 P 694 (1927). On the other hand, the fact that nonprofit hospitals charge for their services will not deprive them of being characterized as charitable. As this court pointed out in *Ev. Lutheran Good Sam. Soc. v. Dept. of Rev.*, 5 OTR 14, 20 (1972):

---

[1] All citations to Oregon Revised Statutes and Oregon Administrative Rules are to the 1989 Replacement Part.

"Hospitals * * * have long been accorded an unusual consideration (unlike most exempt institutions) in that the entity is permitted to charge its patients reasonable fees and still be regarded as charitable."

That opinion goes on to quote from *Benton County v. Allen*, 170 Or 481, 490, 133 P2d 991 (1943), where the court stated:

"The exigencies of frontier life, however, no doubt caused western courts to take a broader and more generous view. Particularly was this true in relation to the establishment of hospitals, which, under frontier conditions, were greatly needed, and public policy encouraged their establishment by exempting their property from taxation where they could, even in a slight degree, qualify as charitable institutions. It is perhaps impossible to establish a definite yardstick; each case must be considered upon its own facts."

The Oregon Supreme Court has set out a three-part test that must be met in order for an organization to qualify as a "charitable institution" under ORS 307.130:

"(1) [T]he organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 89, 817 P2d 1292 (1991).

The test is applied to an organization overall and not to any specific part or operation. For example, whether a hospital involves a gift or giving is determined on an overall basis, not by whether the cafeteria, pharmacy or laboratory involves giving. Obviously, hospitals are not free. Anyone who has ever been charged for two aspirin or a band-aid in a detailed hospital bill would, on that basis alone, be certain there is no charity involved. However, as noted above, hospitals historically have been given special consideration. Nonprofit hospitals are not private ventures designed to benefit private investors, but presumably exist for the good of the community.

Since defendant concedes plaintiff is a charitable organization, there is no need to apply the three-part test set out above. Consequently, defendant's arguments with regard to the absence of a gift or giving in the operation of the gift shop are irrelevant. If plaintiff's hospital is charitable overall,

the fact that some portion of its operation makes a profit is immaterial. It is also immaterial that the operation of the gift shop competes with taxable businesses. *See YMCA v. Dept. of Rev.*, 268 Or 633, 635, 522 P2d 464 (1974). If plaintiff's hospital as a whole is a charitable institution, then it is only necessary that the property involved: (1) be "exclusively used" by plaintiff in accomplishing its charitable goals, and (2) "substantially contribute" to furthering those goals. *See* ORS 307.130(1)(a) and OAR 150-307.130-(A)(4)(b)(A).

In construing the phrase "exclusively used," the Oregon Supreme Court has held that it refers to the primary, as opposed to the incidental use of the property. *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 29, 343 P2d 893 (1959). For example, the primary use of a building may be to house and feed the poor, which is an exempt use. The same building may also be used for other functions, such as church socials, public lectures, or travelogue presentations. Those incidental uses will not deprive the property of its charitable exemption. Defendant does not challenge this aspect of use.

■ To be exempt, property must not only be "exclusively used" by the charitable organization, that use must "substantially contribute" to achieving the organization's purposes.[2] Property directly used to accomplish such purposes, such as a classroom in a school or an emergency room in a hospital, raises no questions. The questions arise when property is used only indirectly by the charitable organization.

Two examples will help illustrate the concept. The purpose of a school is to educate. A building used only to house a school's employee is not directly used for education; it is used as a residence. However, if the school needs the employee to be present 24 hours a day, use of the building to

---

[2] The test applied by the courts is not a precise concept. It has even been expressed in the alternative:

"To qualify for a charitable exemption under ORS 307.130, the taxpayer must show first that 'the activity undertaken on the property *substantially contributes* to the furtherance of the charity's goals.' [O]r, stated another way, that such a use 'is incidental to and *reasonably necessary* for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution.'" *German Apost. Christ. Church v. Dept. of Rev.*, 279 Or 637, 641, 569 P2d 596 (1977) (citations omitted) (emphasis added).

Since the defendant has used "substantially contributes" in OAR 150-307.130-(A)(4)(b)(A), the court will use that term.

house the employee substantially contributes to the overall objectives of the school. *Id.* at 30. Likewise, a cafeteria in a hospital is not used to heal the sick but to provide food for the staff and visitors. Typically, providing food for staff and visitors is considered to substantially contribute to the operation of a hospital. It is not enough that revenue from the property is used to fund or promote the purposes of the organization. The actual use of the property must be related to those purposes.

In summary, the court must determine what role the use of the property plays in the institution's accomplishment of its charitable purposes. This determination must focus on the relationship of the activity or use to the institution's exempt purposes. For example, in *YMCA v. Dept. of Rev.*, 268 Or 633, 522 P2d 464 (1974), the Oregon Supreme Court found that areas used for a barbershop and tailor shop did not help the YMCA accomplish its goals. However, if the YMCA had involved the tailor shop in its program by teaching young men how to fit clothing or how to dress properly, that area may have been exempt.

Although courts are required to make this determination, reason dictates they should do so with care. Individuals involved in an exempt organization's work, particularly in the area of medicine, have expertise and experience not possessed by the courts. Is making a magazine available to a patient less important than making a cup of coffee available to a visitor? It is these kinds of decisions which should make courts hesitant to substitute their judgment for that of the exempt organization.

Having said this, the question remains: What role does a gift shop play in a hospital's healing objectives? Plaintiff has submitted the affidavit of its hospital administrator who expressed her opinion that plaintiff "must maintain a gift shop such [sic] which offers flowers, candy, reading materials and other sundries desired by its employees, patients and their visitors in order that it fulfill its objective of attending to and enhancing the well-being and health of its patients." This affidavit tends to show that the role of the gift shop is to support plaintiff's primary objective of caring for the sick and injured.

Defendant does not dispute that items from the gift shop can bring cheers and smiles to plaintiff's patients; they provide diversion from the boredom and anxiety attending those awaiting operations or recovering from an illness. Flowers and cards lift the spirits and touch the hearts of the depressed and hurting. This transcendental aspect of the healing arts is gaining greater recognition of its importance for the recovery of full health.[3]

■   Defendant contends the gift shop does not contribute in a substantial way to plaintiff's charitable objectives. Defendant argues that other businesses, such as a rental television shop, could fall into the same category. However, this argument misses the point. Perhaps hospitals of the future will have an in-house movie theater or athletic club. The question is not what activity is being conducted, but how that activity relates to the charitable organization's purposes. Does it substantially contribute to the purposes of the charitable organization?

In this day and age, the therapeutic effects of activities such as reading, television and being cheered by visitors may be viewed as reasonably necessary for the welfare of the patient.[4] The emotional "medicine" afforded a patient or family members may be as important in some cases to a successful recovery as any drug or other medication. Defendant has not submitted any affidavits to the contrary. While this is a factual question, defendant has not opposed the exemption on that ground. Rather, defendant's opposition is on legal or theoretical grounds which the court has found not applicable. The court finds that the gift shop area is exempt from property taxation. Now, therefore,

IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment is denied.

Costs to neither party.

---

[3] *See generally* Cousins, *Anatomy of an Illness as Perceived by the Patient* (1979).

[4] One may speculate that indiscriminate use of such gifts, such as a heart patient reading a scary book or a diabetic patient eating candy, may not be beneficial.