IN THE TAX COURT OF THE
STATE OF OREGON

ARCHDIOCESE OF PORTLAND IN OREGON

*v.*

DEPARTMENT OF REVENUE

(TC 4114)

Eugene E. Feltz, Palmer, Feltz, Smith & McDonald, Portland, represented Plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Plaintiff rendered October 5, 1998.

### CARL N. BYERS, Judge.

Plaintiff appeals from the denial of a 1996 property tax exemption for a caretaker's residence located at its summer youth camp. Claiming exemption as a charitable organization under ORS 307.130,[1] Plaintiff contends that its caretaker's residence is reasonably necessary for the operation of

---

[1] All references to the Oregon Revised Statutes are to 1995.

the camp. Defendant contends that the caretaker's residence is used primarily for the personal benefit of the caretaker and therefore is not exempt from taxation.

## FACTS

The summer youth camp comprises approximately 240 acres and is located about 35 miles east of Portland and 8 miles from the City of Sandy. It is at the end of a gravel road and is surrounded by United States Forestland. The closest residence is approximately one-half mile away and does not have a view of the camp entrance. The camp is used approximately 215 days per year, primarily as a summer camp by Plaintiff, but with additional use by the Portland Outdoor School and other church groups, leaving about 150 days a year when the camp is not used. The caretaker's residence is described as a rustic cabin originally consisting of one bedroom, bath, a small office, kitchen, and living room. In the late 1950's, when a family served as caretakers, an old building was pulled up next to the cabin and converted into a second bedroom.

Wilma Ouhl, Executive Director of the camp for 25 years, testified that it is necessary for a caretaker to live on site because of the remote location of the camp. The caretaker serves as a security guard, performs maintenance and repairs, opens and closes the camp, and directs users to their cabins. Plaintiff's primary concerns are with vandalism, trespassing, and natural dangers such as frozen pipes and fires. Plaintiff requires the caretaker to live on site but does not charge him for housing. Ouhl indicated that Plaintiff had considered other security alternatives, such as electronic surveillance or a private security force, but neither was financially feasible or acceptable.

Two other witnesses testified on behalf of Plaintiff. The manager of a security firm from Portland testified that it would cost in excess of $100,000 for year-round protection by on-site security guards. Another witness, who serves on the risk-management committee for the Boy Scouts of America, testified that all Boy Scout Camps have on-site caretakers to protect against vandalism, timber theft, illegal drug and alcohol activities, and other threats to the property.

Defendant's witness, an employee of the assessor's office, testified that exemption as a religious organization under ORS 307.140 was denied because of the narrow wording of the statute. The assessor did not consider exemption under ORS 307.130 as a charitable organization because the department's administrative rule requires the assessor to return applications where more than one exemption program is checked. *See* OAR 150-307.162.

## ANALYSIS

■ In denying Plaintiff's earlier Motion for Summary Judgment, the court indicated that property owned by a religious organization may qualify for property tax exemption under both ORS 307.140 and ORS 307.130. Accordingly, the department cannot by rule limit the applicant to one statute when the property may qualify under either. *See Archdiocese of Portland v. Dept. of Rev.*, 14 OTR 264 (1998).

■ The court finds that due to the remote location and the requirements of the operation of the summer camp, it is reasonably necessary for Plaintiff to maintain an on-site caretaker to achieve its charitable objectives. ORS 307.130; *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 37, 343 P2d 893 (1959). Without the protection of a full-time caretaker, vandals, thieves, drug outlaws and others would destroy the facility and the surrounding environment. In addition, it is reasonable for Plaintiff to use an on-site caretaker instead of a private security force or electronic surveillance. Accordingly, the caretaker's cabin is exempt from property taxation along with the rest of the summer camp. Judgment will be entered consistent with this Opinion.